# 19-CV-2053

IN THE

EASTERN DISTRICT OF NEW YORK

In Re: MARILYN MADER

Debtor

Bankruptcy Case No. 18-70291

MARILYN MADER,

Appellant

v.

JPMORGAN CHASE BANK, N.A.

Appellee

APPELLEE'S BRIEF

Kevin M. Butler, Esq.
Peter R. Bonchonsky, Esq
BONCHONSKY & ZAINO, LLP
226 Seventh Street, Suite 200
Garden City, NY 11530
(516) 747-1400
kbutler@bzlawny.com
pbonchonsky@bzlawny.com
Attorneys for Appellee
JPMORGAN CHASE BANK, N.A.

# CORPORATE DISCLOSURE STATEMENT

Appellee, JPMorgan Chase Bank, N. A. is a wholly owned subsidiary of its

parent corporation, JPMorgan Chase & Co., a publicly held corporation.

There are no publicly traded corporations that own 10% or more of the stock

of JPMorgan Chase & Co.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………...…………….…………………… iii

I.    JURISDICTIONAL STATEMENT………………………………1

II.   STATEMENT OF ISSUE PRESENTED FOR REVIEW……………… 1

III.  STATEMENT OF THE CASE ………………………………………………………1

  (i) Factual Background…………………………………………………………3

  (ii) Proceedings in the Bankruptcy Court……………………………………..4

  (iii) Rulings presented for review………………………….………………………11

IV.   SUMMARY OF THE ARGUMENT…………………………………....…..11

V.    LEGAL ARGUMENT………………………………………………....………………12

  A.    STANDARD OF REVIEW……………………………………………12

  B.    THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION
        IN DENYING MADER'S MOTION FOR RECONSIDERATION
        BECAUSE MADER COMPLETELY FAILED TO MAKE THE
        REQUIRED SHOWING UNDER RULE 60(b)………………………..14

     i.    Motions for reconsideration under Rule 60(b) are not favored and
           requires a "highly convincing" showing of "exceptional
           circumstances."………………………………………………………..15

     ii.   Mader's motion was not supported by "newly discovered
           evidence" and therefore was properly denied………..…….…….17

     iii.  Mader failed to make any showing that Chase engaged in fraud
           which prevented Mader from fully presenting her case…………20

     iv.   This appeal brings before this Court only the denial of the motion
           for reconsideration………...………………………………….………23

VI.   CONCLUSION……………..…………………………………………..25

# TABLE OF AUTHORITIES

CASES                                                                                    PAGES(S)

In re A.T. Reynolds & Sons, Inc
452 B.R. 374 (S.D.N.Y. 2011)……………………………………………………24

Ace Investors, LLC v. Rubin
561 Fed. Appx. 114 (2d Cir. 2014)…………………………………………………..21

Analytical Surveys, Inc. v. Tonga Partners, L.P.
684 F.3d 36 (2d Cir. 2012)…………………………………………………………..16

Branum v. Clark
927 F.2d 698 (2d Cir. 1991)……………………………………………………………12

Catskill Development L.L.C. v. Park Place Entertainment Corp.
286 F. Supp. 2d 309 (S.D.N.Y. 2003)………………………………………...20, 21

Cyrus v. City of New York
450 Fed. Appx. 24 (2d Cir. 2011)…………………………………………………12

Fido's Fences, Inc. v. Bordonaro
Bankr. Case No. 8-14-70190, 15-CV-3025, 2015 WL 7738020, 2015 U.S. Dist.
LEXIS 160867 (E.D.N.Y. Nov. 30, 2015)………….……………………...…...13

Fleming v. New York Univ
865 F.2d 478 (2d Cir. 1989)…………………………………….……...…………………21

Freedom, N.Y., Inc. v. United States
438 F. Supp. 2d 457 (S.D.N.Y. 2006)……………………………………...…15, 16

Johnson v. Univ. of Rochester Med. Ctr
642 F.3d 121 (2d Cir. 2011)…………………………………………………………13

Kothe v. Smith
771 F.2d 667 (2d Cir. 1985)…………………………………………………………24

Lynch v. City of New York
589 F.3d 94 (2d Cir. 2009)………………………………………………….………13

Malik v. McGinnis
293 F.3d 559 (2d Cir. 2002)………………………………………………13

Massop v. United States Postal Serv.
493 Fed. Appx. 231 (2d Cir. 2012)………………………………………..24

McMahon v. Chubb Group of Ins. Cos
553 Fed. Appx. 85 (2d Cir. 2014)………………………………………...13

Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.
818 F.3d 1320 (11th Cir. 2016)…………………………………………...21

Rozier v. Ford Motor Co.
573 F.2d 1332 (5th Cir. 1978)………………..…………………………...21

Sequa Corp. v. GBJ Corp.
156 F.3d 136 (2d Cir. 1998)………………………………………………16

Shrader v. CSX Transp., Inc.
70 F.3d 255 (2d Cir. 1995)………………………………...………..13, 16

Stevens v. Miller
676 F.3d 62 (2d Cir. 2012)………………..…………………....……..24

U.S. v. International Broth. Of Teamsters
247 F.3d 370 (2d Cir. 2001)…………………………………...……15, 17

STATUTES

28 U.S.C. § 157(a)………………………………………………………1

28 U.S.C. § 157(b)(1)……………………………………………………1

28 U.S.C. § 158………………………………………………………1

28 U.S.C. § 1334………………………………………………....1

FEDERAL RULES

Federal Rule of Bankruptcy Procedure Rule 9024………………………...…..14, 15

Federal Rules of Civil Procedure Rule 59(b)……………………………………..15

Federal Rules of Civil Procedure Rule 60(b)……………1, 2, 11, 12, 13, 14, 15, 23

Federal Rules of Civil Procedure Rule 60(b)(2)……………………………..14, 17

Federal Rules of Civil Procedure Rule 60(b)(3)………………………….14, 20, 21

## I.      JURISDICTIONAL STATEMENT

This appeal arises from an order of the United Stated Bankruptcy Court for the Eastern District of New York dated March 22, 2019 denying the motion for reconsideration made by the Appellant Marilyn Mader.  The Bankruptcy Court had jurisdiction to enter the order pursuant to 28 U.S.C. §§ 157(a), 157(b)(1) and 1334. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158.

## II.     STATEMENT OF ISSUE PRESENTED FOR REVIEW

Did the Bankruptcy Court abuse its discretion when it denied the motion of Appellant Marilyn Mader for reconsideration, under Rule 60(b), of the  court's prior order dated February 5, 2019 which terminated the bankruptcy court Loss Mitigation program with respect to Mader's mortgage with appellee JPMorgan Chase Bank, N.A.?

## III.    STATEMENT OF THE CASE

Appellant Marilyn Mader ("Mader"), a Chapter 7 debtor in the bankruptcy proceeding, appeals from an order dated March 22, 2019 rendered by Hon. Louis A. Scarcella, United States Bankruptcy Judge. The court denied Mader's motion for

"reconsideration" of its prior order dated February 5, 2019, wherein Judge Scarcella terminated the court's loss mitigation program with respect to Mader's mortgage loan with appellee JPMorgan Chase Bank, N.A. ("Chase"). (App. 13-19).  Mader's one-page motion for reconsideration alleged in broad and conclusory fashion that Chase provided "false evidence and testimony" with respect to her escrow account balances at the January 31, 2019 evidentiary hearing, which was held to assist the court in deciding whether it should terminate loss mitigation.  (App. 21).  In Mader's motion for reconsideration she sought to "present additional evidence and documentation" for the court's consideration. (App. 21).  But Mader's motion failed to demonstrate that Chase engaged in any fraud whatsoever or that any "newly discovered" evidence was presented which would alter the court's prior determination to terminate loss mitigation.   The bankruptcy court had terminated loss mitigation because Chase and Mader expended multiple efforts over ten months to qualify Mader for a loan modification, but ultimately Chase could not create an affordable payment for Mader on the previously modified loan.    The court, recognizing that the court's loss mitigation program is voluntary, and considering the many months the parties had attempted to reach a resolution, granted Chase's request to terminate the loss mitigation program.   Since Mader's motion for reconsideration failed to make the required showing under Rule 60(b), the court denied the motion.

### (i)  **Factual Background**

On March 22, 2002, Mader executed a note in the amount of $100,875 ("Note") to Washington Mutual Bank, FA ("WaMu") secured by a mortgage executed on the same day ("Mortgage") against her premises located at 7 Federal Lane, Coram, New York ("Premises").  (App. 23-53).  The Mortgage was recorded on April 22, 2002. (App. 23).

On March 12, 2003, Mader executed a second note and mortgage in the amount of $50,037.41 to WaMu secured against the Premises. (App. 54-86).   This second mortgage was recorded on April 2, 2003.  (App. 60).   On the same day, Mader also executed a Consolidation, Extension and Modification Agreement, which consolidated the two notes and mortgages to form a single lien in the amount of $150,000 ("Modification Agreement"). (App. 87-125).   The Modification Agreement was recorded on April 2, 2003. (App. 87).

On January 15, 2004, Mader executed a third note and mortgage in the amount of $35,290.14 to WaMu secured against the Premises.  This third mortgage was recorded on February 2, 2004. (App. 135, 136).  On the same day, Mader also executed a further Consolidation, Extension and Modification Agreement, which consolidated all three notes and mortgages to form a single lien in the amount of

$183,750 ("CEMA").  (App. 136-180).  The CEMA was recorded on February 10, 2004. (App. 136).

The aforesaid notes and mortgages, as consolidated, were assigned to Chase by assignment dated February 10, 2013 and recorded on October 4, 2013.  (App. 181-185).

As of January 31, 2019, Mader was in default for 74 months (since on or about December 2012) and during that time Chase advanced and paid the Premises' real estate taxes and homeowner's insurance on behalf of Mader.  (App. 187-188). During this 74-month period of default, Mader's escrow account balance accrued to a negative $40,900.02 (as of December 18, 2018). (App. 196).

According to a Chase payoff letter dated December 18, 2018, Mader owed the sum of $307,198.84 through January 5, 2019. (App. 196).

According to Mader's bankruptcy Schedule A the Premises has a value of $160,000.  (App. 213).

(ii)    **Proceedings in the Bankruptcy Court**

On January 12, 2018, Mader filed a Chapter 7 bankruptcy petition in the Eastern District of New York under case number 8-18-70291.  (App. 241-275).

On February 14, 2018, Mader filed a request for loss mitigation.  (App. 276).

On March 26, 2018, an Order was entered directing Mader and Chase to participate in the Court's Loss Mitigation Program with respect to the Premises. (App. 277-287).

On March 28, 2018, Chase sent a Loss Mitigation Contact Designation with Loan Modification Application to Mader.  (App. 288-301).

On May 8, 2018, a Loss Mitigation Status Report was filed by Fein Such & Crane LLP ("Fein Such"), counsel for Chase.   The report stated that no loss mitigation package was received from Mader.   It further stated that Mader was reviewed for a "stream-lined" modification but she was denied.   As a result, Chase requested that the loss mitigation program be terminated.  (App. 302).

On June 15, 2018, Fein Such filed a Loss Mitigation Status Report on behalf of Chase.  The report stated that "On May 9, 2018, a copy of the denial letter (Exhibit A) was forwarded to counsel for review."  On June 13, 2018, Fein Such provided additional details to Mader's counsel regarding the programs that were considered and why Mader did not qualify.  The report further requested that loss mitigation be terminated. (App. 303-319).

On August 6, 2018, Fein Such filed a Loss Mitigation Status Report on behalf of Chase.  The report stated that a payoff statement, reinstatement quote, pay history and escrow information were provided to Mader's counsel on August 6, 2018.  The

report also stated that Mader had been reviewed for loss mitigation and her request for a loan modification was denied as stated in the last status letter filed on June 15, 2018. The report again requested that the loss mitigation program period be terminated. (App. 320).

On September 6, 2018, Mader filed an Objection to Termination of Loss Mitigation. (App. 321-334).

On September 11, 2018, a Loss Mitigation Status Conference was held at which Christopher Pavlik, Esq., appeared for Chase who advised the court that Mader had been reviewed twice under the loss mitigation and she was denied both times because Chase could not create an affordable payment on the previously modified loan. (App. 336-337). Pavlik also advised the court that the requested loan statements had been sent to Mader's counsel. Mader advised the court that she was now proceeding pro-se in the Loss Mitigation. The court adjourned the matter to October 30, 2018 and stated that Chase must appear by both counsel and a representative of the bank with personal knowledge of the Mortgage loan. (App. 350-352).

On October 30, 2018, a further status conference was held. Chase's counsel appeared together with a Chase representative, Greg O'Guin, with personal knowledge of the subject loan. (App. 368). However, the conference was adjourned,

first to November 27, 2018 and then again to December 18, 2018 in order to allow Mader more time to review a further detailed Chase denial letter that was sent to Mader on October 26, 2018. (App. 369-371).

At the December 18, 2018 status conference, Chase's counsel appeared together with Chase representative Greg O'Guin.   At the conference Mader questioned why the mortgage statement dated November 8, 2018 showed her monthly escrow amount payment was $1,032.45.   (App. 378-379).   The Court adjourned the matter to January 31, 2019 for an evidentiary hearing to allow Chase to provide an explanation as to why Chase's monthly statement showed that her monthly escrow payment would be a total of $1,032.45.   Chase was to provide an explanation by January 11, 2019.   The Court stated in pertinent part, "As I said I looked upon this as a status, to really try and get an understanding of what issues may be here.   So that if we come back and there's still controversy, then we'll take testimony as to how everything is going to unfold here.   That would be including you also under oath, Ms. Mader." (App. 388).

At the evidentiary hearing held on January 31, 2019, Mader appeared and was represented by counsel, Perry Habib, Esq. (App. 399).   Chase appeared by Christopher Pavlik, Esq. and Chase's representative, Greg O'Guin.   At the outset the court noted that "this is a status conference between the debtor and the mortgagee, J.P. Morgan Chase Bank, with respect to the loss mitigation program.   The last time

we were here J.P. Morgan Chase -- not only the last time we were here but even before that --  had requested termination of the loss mitigation and I have not seen anything on the docket to lead me to conclude anything other than they are still here to request termination of loss mitigation." (App. 400).

Chase's counsel answered in the affirmative and advised the court that Chase provided an escrow analysis, which included a payment breakdown, to Mader which was uploaded to the docket on January 11, 2019.  (App. 400-401, 457-458).

The Court stated that "So today the matter before us is whether or not loss mitigation should be terminated." (App. 404).

The Court stated further in pertinent part as follows:

 "So now I return to what is the heart of the dispute? I think one thing we can all agree on is that the Court cannot force the mortgagee to modify the mortgage.  That, they need to do on their own volition in accordance with whatever program that they may have in place with respect to the particular homeowner and the request to modify the mortgage was denied.  They only have one program available, Ms. Mader wasn't eligible for that program and the appeal was also upheld." (App. 408).

At the hearing, Mader raised an issue with the amount of her negative escrow balance and why her monthly escrow payment had increased to over a $1,000. Mader's counsel also questioned the accuracy of the escrow balance owed in the amount of $40,900.02, because while the Chase monthly statements showed a negative $40,900.02, the escrow analysis provided by Chase and uploaded to the

8

docket on January 11, 2019 indicated an escrow "shortage" of $22,849.49. (App. 410-411).  To explain, O'Guin testified as follows: "Every January an escrow analysis is done for the previous year." (App. 411).  He stated that the Chase letter referring to an escrow analysis "[w]as last year's amount because this year's escrow analysis has not been done because we're at the end of January." (App. 411). O'Guin then stated: "So the $22,849.49 was as of the end of 2017 going into 2018". (App. 411).  With respect to why the escrow payment had increased, O'Guin testified that it included her monthly taxes and insurance of $563.34 plus an additional monthly amount to repay her escrow shortage of $22,849 as of Dec. 2017 over 48 months. (App. 421-422).

With respect to why Mader did not qualify for a loan modification, O'Guin testified as follows: "So that's the crux—that's the issue right there is we can't reduce the payment to make it affordable and why would we give her a modification at a higher interest rate with a higher payment when this one has been a struggle to make. (App. 415).

The Court, after hearing the testimony, stated as follows:

 "After careful consideration of the arguments that have been presented to me today and after listening to the testimony of this afternoon, I am satisfied with the explanation from J.P. Morgan Chase as to how the escrow balance is in excess of $1,000 on the mortgage statement.  That excess of $1,000 on the mortgage statement takes into account the current escrow payment that Ms. Mader would be obligated to make plus the monthly shortfall because J.P. Morgan Chase has taken the escrow

shortfall, i.e., the monies that they have paid out on behalf of Ms. Mader, the customer, for insurance and taxes.  They have this lump sum that they have paid out and they are spreading that out over 48 months so when you calculate the spread over 48 months and take that number and you add it to the current escrow payment that's why the mortgage statement reflects an escrow payment in excess of $1,000." (App. 443-444).

The court then ruled as follows: "In any event, again, after careful consideration of the arguments that have been made to me this afternoon and, again, after careful consideration of the testimony taken this afternoon I conclude that the loss mitigation program should be terminated." (App. 444).

On February 5, 2019, the court entered an order terminating loss mitigation with respect to Mader's mortgage with Chase.  Mader took no appeal from the Order. (App. 459-460).

On February 15, 2019, Mader filed a one-page motion for "reconsideration" of the prior order dated February 5, 2019 terminating loss mitigation.  (App. 20-22).

On February 18, 2019, Chase filed a motion for relief from the automatic stay. (App. 461-730).

On March 6, 2019, Mader filed an "Objection to Notice of Motion for relief." (App. 731-732).

On March 19, 2019, a hearing was held on Mader's motion for reconsideration and on Chase's motion for relief from the automatic stay. (App. 733-765).

On March 22, 2019, an order was entered granting Chase's motion for relief from the stay and an order was entered denying Mader's motion for reconsideration. (App. 766-767, 768-769).

### (iii)   **Rulings presented for review**

The order dated March 22, 2019, which denied Mader's motion for reconsideration is presented for review. (App. 768-769).

On April 5, 2019, Mader filed a Notice of Appeal from the Order denying her motion for reconsideration. (App. 13-19).

### IV.   **SUMMARY OF THE ARGUMENT**

The bankruptcy court did not abuse its discretion in denying Mader's motion for reconsideration, under Rule 60(b), of the court's prior order terminating the court's voluntary loss mitigation program between Mader and Chase. Mader's motion for reconsideration was based upon her unsupported allegations that Chase had provided "false evidence and testimony" with respect to her mortgage escrow balances at the January 31, 2019 evidentiary hearing. The hearing was held to assist the court in deciding whether the court should terminate loss mitigation with respect

to Mader's Mortgage loan with Chase.   In her motion for reconsideration, Mader made no showing whatsoever that Chase "engaged in fraud, misrepresentation, or other misconduct." Nor did Mader demonstrate that the purportedly "newly discovered" evidence would have in any way altered the court's prior determination. Mader also failed to show that her motion's supporting documents, or the information they contained, were "newly discovered."   Mader's motion was no more than an improper attempt to relitigate the court's prior determination to terminate loss mitigation, and to reiterate arguments with respect to her escrow account balances.   Accordingly, Mader's motion for reconsideration had no basis whatsoever in law or fact.

## V.   LEGAL ARGUMENT

### A.  STANDARD OF REVIEW

"[A]n appeal from an order denying a Rule 60(b) motion brings up for review only the denial of the motion and not the merits of the underlying judgment for errors that could have been asserted on direct appeal." (second alteration in original) (citation omitted) (quoting Branum v. Clark, 927 F.2d 698, 704 (2d Cir. 1991)". Cyrus v. City of New York, 450 Fed. Appx. 24, 25 (2d Cir. 2011).  Therefore, Mader's notice of appeal filed on April 5, 2019 brings before this Court only the denial of her motion for reconsideration under Rule 60(b).  (App. 13-19)

This Court reviews the denial of a motion for reconsideration under Rule 60(b) for abuse of discretion.  Johnson v. Univ. of Rochester Med. Ctr., 642 F.3d 121, 125 (2d Cir. 2011); see also Malik v. McGinnis, 293 F.3d 559, 561 (2d Cir. 2002).  An abuse of discretion occurs when the court's decision rests on an error of law or a clearly erroneous factual finding, id., or when the court overlooks controlling decisions or matters "that might reasonably be expected to alter the conclusion reached by the court".  Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). The clearly erroneous standard requires strong deference to findings of fact based on credibility assessments of witnesses who testified before the court.  Fido's Fences, Inc. v. Bordonaro, Bankr. Case No. 8-14-70190, 15-CV-3025, 2015 WL 7738020, 2015 U.S. Dist. Lexis 160867 at *6 (E.D.N.Y. Nov. 30, 2015).  Furthermore, an appellate court cannot substitute its interpretation of the evidence for that of the trial court simply because the reviewing court might give the facts another construction and resolve the ambiguities differently. Id.

A court has abused its discretion if "it has (1) based its ruling on an erroneous view of the law, (2) made a clearly erroneous assessment of the evidence, or (3) rendered a decision that cannot be located within the range of permissible decisions." McMahon v. Chubb Group of Ins. Cos., 553 Fed. Appx. 85, 86 (2d Cir. 2014) quoting from Lynch v. City of New York, 589 F.3d 94, 99 (2d Cir. 2009) (internal quotation marks omitted).

### B.   THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION IN DENYING MADER'S MOTION FOR RECONSIDERATION BECAUSE MADER COMPLETELY FAILED TO MAKE THE REQUIRED SHOWING UNDER RULE 60(b)

Mader moved for reconsideration of the court's prior order dated February 5, 2019 which terminated the court's loss mitigation program with respect to Chase. The prior order was issued following an evidentiary hearing held on January 31, 2019, at which testimony was taken from Greg O'Guin on behalf of Chase and from Mader who was represented by counsel.   (App. 397-456)

The court properly denied Mader's motion for reconsideration because she failed to make the required showing under Rule 60(b).  The court noted in its order denying the motion for reconsideration that the "(i) Debtor was represented by counsel, Perry M. Habib, Esq. at the Evidentiary Hearing" and "(ii) Debtor had a full and fair opportunity to examine the Creditor's representative at the Evidentiary Hearing" and then ruled as follows: "(iii) Debtor failed to demonstrate by clear and convincing evidence that the court's February 5, 2019 Order should be vacated pursuant to Rule 60(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, as made applicable by Rule 9024 of the Federal Rules of Bankruptcy Procedure, and (iv) there is nothing further to be done in the Court's loss mitigation program …."   (App. 768-769)

i.   <u>Motions for reconsideration under Rule 60(b) are not favored and require a "highly convincing" showing of "exceptional circumstances."</u>

Rule 60(b), made applicable by Bankruptcy Rule 9024, provides that the Court may relieve a party from a final order if a party demonstrates one of its six (6) enumerated grounds for relief.  FRCP 60(b) titled "Relief From a Judgment or Order" states as follows:

> b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Importantly, "A motion for relief from a judgment or order is generally not favored, and is properly granted only upon a showing of exceptional circumstances." <u>U.S. v. International Broth. Of Teamsters</u>, 247 F.3d 370, 391 (2d Cir. 2001).  The burden of proof is on the party seeking relief.  <u>Id</u>.

"In addition to demanding that the movant show "exceptional circumstances", the courts of this circuit also require that the evidence in support of the motion be <u>highly</u> <u>convincing</u>, that the movant show good cause for the failure to act sooner,

15

and that no undue hardship be imposed on the other parties as a result."  (Emphasis supplied.)   Freedom, N.Y., Inc. v. United States, 438 F. Supp. 2d 457, 462–63 (S.D.N.Y. 2006) (quotation and internal quotation marks omitted).

The standard for granting a motion to reconsider is strict and such motion will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked, "that might reasonably be expected to alter the conclusion reached by the court."  Shrader v. CSX Transp. Inc., 70 F.3d 255, 257 (2d Cir.  1995).

A motion for reconsideration "is not a vehicle for relitigating old issues, . . . securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'"  Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012) (quoting Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998).

At the March 19, 2019 hearing on Mader's motion for reconsideration, the court summarized the basis stated by Mader in her motion: "And in Ms. Mader's one-page motion, she states that the basis for her motion to reconsider the prior ruling of the Court, or to vacate the prior order entered by the Court, is for the presentation of additional evidence and documentation.  And she also states that at the hearing in January there was false testimony given to the Court by the mortgagee's representative.  And that was Mr. O'Guin, Gregory O'Guin."  (App. 735).     The court also stated "Ms. Mader had requested an opportunity to address the Court,

16

concerning the calculation that was made by the lender, with respect to the escrow shortage.   That was the heart of the dispute that Ms. Mader had."   (App. 735).

As described in detail below, Mader's motion contained no "newly discovered evidence" nor any evidence that Chase engaged in fraud and was no more than an improper attempt to repeat and re-litigate her arguments that Chase's calculation of her escrow account and escrow payment were factually erroneous.

ii)   <u>Mader's motion was not supported by "newly discovered evidence"</u>
<u>and therefore was properly denied</u>

To prevail on a reconsideration motion based on newly discovered evidence pursuant to Rule 60(b)(2) a movant must show that: (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching. <u>United States v. Int'l Bhd. of Teamsters,</u> 247 F.3d 370, 392 (2d Cir. 2001).

Mader filed her motion for reconsideration on February 15, 2019. (App. 20-22).  At the March 19 hearing on her motion, Judge Louis Scarcella noted "Your motion is barren.  What I mean by that is there is nothing attached to the motion, with respect to what additional evidence and documentation you have…."  Judge Scarcella continued "Excuse me. There is nothing attached to your motion,

concerning what false testimony was given to the Court.  <u>So what you are asking for is a do-over.</u>   So let me hear you, very briefly, tell me what is this additional evidence and documentation that you want to present to the Court."    (Emphasis supplied.)  (App. 738-739).  Mader responded that "Firstly, I filed documents on Friday.  I don't know how they didn't get into the [inaudible], but I have them stamped." The court responded "I don't know where you filed them, but they're not on the docket." (App. 739).

The court docket indicates that on March 15, 2019, Mader filed documents under Docket No. 71 titled "Exhibit Filed by Marilyn Mader (RE: related document(s)<u>66</u> Objection filed by Debtor Marilyn Mader) (rom) (Entered: 03/18/2019)" (App. 770-775, 8).  However, the related document #66 was Mader's Objection to Chase's Motion for Relief from Stay, not Mader's motion for reconsideration.  Therefore, the court was correct in stating that "there is nothing attached to the motion, with respect to what additional evidence and documentation you have."

Regardless of whether the documentary evidence was incorrectly filed or not, they provided no support whatsoever for Mader's assertions.    The information contained in the documents were clearly not "newly discovered".   Nor did they lend any support to Mader's contention that the Chase escrow calculations were factually erroneous.    The documents consisted of a monthly mortgage statement dated

February 8, 2019, which shows a negative escrow balance of $40,900.02, an insurance "Homeowners Renewal Policy Declarations" for the period 8/19/18 to 8/19/19, a Statement of Taxes for December 1, 2018 through November 30, 2019, a Chase denial letter dated October 5, 2018 with specific details of why Appellant was denied for the Chase Streamline Modification Program and lastly part of an email from Tracy Wilkins, (a Fein, Such employee) dated June 13, 2018 which provides certain information requested by Mader.   (App. 770-775).   All of these documents, except for the mortgage statement dated February 8, 2019, were available to Mader at the time of the January 31, 2019 hearing.   While the mortgage statement dated February 8, 2019 is dated after the hearing it showed a negative escrow balance of $40,900.02 which was completely consistent with Chase's prior monthly mortgage statements sent to Mader.   Therefore, Mader did not make the required showing that these documents, or the information they contained, were "newly discovered."   The Court correctly stated that "All of the documents that you had concerning this escrow, you had those at the time we were in court for the hearing.   So it's not considered like newly discovered evidence.   This is information that you had, with respect to your claim that the escrow amount was X, and the bank's claim the escrow amount was X-plus." (App. 750-751).

Regardless of whether the documents were newly discovered, none of the documents, or the information they contain, support Mader's assertion that the Chase

escrow calculations were in error.   To the contrary, these documents support Chase's

escrow calculations.   Therefore, and of critical importance, this "new" information

would not have altered the court's decision to terminate the loss mitigation program.

Importantly, Judge Scarcella pointed out to Mader at the March 19, 2019

hearing on Mader's motion to reconsider as follows:

"Your counsel had a full and fair opportunity to take issue with whatever
statements that were made by JPMorgan Chase, on the issue of the escrow.  But at
the end of the day, the loss mitigation program is designed for the parties to
negotiate, to see if the Debtor qualifies for a mortgage modification.  And according
to the bank's, what they call the Chase Streamline program, you did not qualify for
the mortgage modification.  So there's nothing further.  There was a denial.  There's
nothing further for the parties to do, under the umbrella of loss mitigation.  You
received a denial letter, and you wanted the lender to do a re-review.  And the lender
did that, they did a re-review.  And they came back and said you still did not qualify
for the mortgage modification.  And so again, there's a request to terminate loss mit,
because there's nothing further to be done in loss mit.  There has been a denial."
(App. 743).

Based upon Mader's insufficient showing, the court correctly found "[y]ou

have not met your burden that there was any newly discovered evidence, concerning

the escrow amount."   (App. 746).

iii)   <u>Mader failed to make any showing that Chase engaged in fraud which
prevented Mader from fully presenting her case</u>

Rule 60(b)(3) provides for relief from judgment in the case of fraud,

misrepresentation or other misconduct of the adverse party.  To be entitled to relief

pursuant to Rule 60(b)(3), a moving party is required to meet a high standard to

show "by clear and convincing evidence" that 1) the adverse party "engaged in fraud,

misrepresentation, or other misconduct" and 2) such conduct "prevented [him] from fully and fairly presenting his case." Catskill Development L.L.C. v. Park Place Entertainment Corp., 286 F. Supp. 2d 309, 312 (S.D.N.Y. 2003).

"Rule 60(b)(3) motions cannot serve as an attempt to relitigate the merits and may only be granted when the movant establishes a material misrepresentation or fraud by clear and convincing evidence. Fleming v. New York Univ., 865 F.2d 478, 484 (2d Cir. 1989)(internal quotations omitted)." Ace Investors, LLC v. Rubin, 561 Fed. Appx. 114, 117 (2d Cir. 2014). Importantly, relief is reserved for judgments that were unfairly obtained, not for those that are claimed to be factually in error. (See Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc., 818 F.3d 1320, 1324 (11th Cir. 2016) quoting from Rozier v. Ford Motor Co. 573 F.2d 1332, 1339 (5th Cir. 1978).

In her motion for reconsideration, Mader makes no showing that Chase "engaged in fraud, misrepresentation, or other misconduct". At most, Mader asserts that Chase's calculations of her escrow account were factually erroneous. This is completely insufficient to support a motion for reconsideration based upon an allegation that a party engaged in fraud.

Additionally, Mader's motion to reconsider was an improper attempt to relitigate the merits of the court's prior decision to terminate the loan mitigation program. At the March 19, 2019 hearing on Mader's motion for reconsideration,

the court stated: "We adjourned the request to terminate loss mitigation a number of times, to give you the opportunity to discuss with the lender, or to make a presentation concerning the calculation of the escrow shortage. That is the heart of this dispute. You feel that they have miscalculated the escrow shortage amount. We went through a hearing in January, where it was all laid out. You were represented by counsel." (App. 739-740). Mader's motion to reconsider termination of loss mitigation contains no more than a repetition of her prior conclusory arguments that her Chase escrow account balances contained "repeated false numbers and statements."

Judge Scarcella stated at the outset of the March 19, 2019 hearing, that "This matter had been in loss mitigation for quite some time…." (App. 735). He then addressed the hearing held on January 31, 2019 and stated as follows:

"Ms. Mader wished to make statements to the Court at the last hearing, and those statements were made while Ms. Mader was under oath. Her counsel elicited testimony from Ms. Mader. Counsel did not seek to introduce any documentary evidence at that time, with respect to any of the claims made by the Debtor, concerning the escrow account, nor did counsel for the Debtor ask any questions of the bank's witness at that time, the bank's officer, Greg O'Guin, O-G-U-I-N. He explained to the Court, and he did so under oath, how the escrow shortage came about, and counsel declined to ask any questions of the bank officer, with respect to the escrow issue." (App. 736-737)

Importantly, Judge Scarcella also pointed out that even if Chase had used Mader's escrow numbers, she still would not have qualified for a modification. The court stated "And it was also made clear at the hearing that even if your bank was

entertaining your request to modify your mortgage, and use the mortgage balance that included the (inaudible) amount of the escrow shortage, which is what you were claiming it was, you still would not qualify for a modification of the mortgage, under the bank's Streamline mortgage program." (App. 741).

The court ruled as follows:

"And so as I said, the Court finds that you have not satisfied your burden to show that the order that terminated loss mitigation should be vacated.  So with that said, the Court will issue an order denying the motion." (App. 751).   Judge Scarcella also stated "What I am guided by, and I have to follow the law, what I am guided by is that a motion for relief, from a judgment or an order, is generally not favored, and is properly granted only upon a showing of exceptional circumstances."  (App. 745).

By reason of the foregoing, the court properly ruled that Mader's motion for reconsideration, consisting of conclusory and unsupported allegations she had previously made, completely failed to meet any of the requirements of Rule 60(b).

Mader's appeal fails to establish that the court abused its discretion by denying her motion for reconsideration of the court's prior order terminating the loss mitigation program. Accordingly, the order denying Mader's motion for reconsideration should be affirmed in its entirety.

iv)   <u>This appeal brings before this Court only the denial of the motion for reconsideration.</u>

Finally, to the extent Mader attempted to use her motion for reconsideration to challenge the merits of the court's order dated February 5, 2019 which terminated loss mitigation, she was improperly using the motion as a substitute for appeal. See Stevens v. Miller, 676 F.3d 62, 67 (2d Cir. 2012)("In no circumstances, though, may a party use a Rule 60(b) motion as a substitute for an appeal it failed to take in a timely fashion").   To the extent that Mader's arguments can be construed as a challenge to the court's order terminating loss mitigation, the District Court lacks jurisdiction to review that order as Mader did not file a notice of appeal from that order. See Massop v. United States Postal Serv., 493 Fed. Appx. 231, 232 (2d Cir. 2012).

Nevertheless, it bears noting that the Loss Mitigation Order stated as follows:

"The Loss Mitigation Program is designed to function as a forum in individual bankruptcy cases for debtors and lenders to reach consensual resolution whenever a debtor's residential property is at risk of foreclosure.  The Loss Mitigation Program aims to facilitate resolution by opening the lines of communication between the debtors' and lenders' decision-makers."  (Emphasis supplied.)   (App. 279).

Thus, while the loss mitigation program is designed for the parties to negotiate to see whether the debtor qualifies for a loan modification, a court may not impose a settlement upon the parties. (See In re A.T. Reynolds & Sons, Inc., 452 B.R. 374, 382 (S.D.N.Y. 2011) quoting from Kothe v. Smith, 771 F.2d 667, 669 (2d Cir. 1985) "It is well-settled that a court cannot force a party to settle, nor may it invoke pressure tactics designed to coerce a settlement.") (internal quotations omitted).

24

As described in detail in this brief's statement of the "Proceedings in the Bankruptcy Court," a total of eight (8) Loss Mitigation status hearings were held during the period from May 9, 2018 through January 31, 2019.  The Bankruptcy Court provided Mader with numerous opportunities to try to reach a resolution with Chase under this purely consensual program, but the parties were unable to do so through no fault of Chase.  The inability to reach a resolution under this program does not subject a party to liability or other relief, and Mader makes no argument to the contrary.  The record shows that a lengthy and considerable effort was made to reach a resolution.   That none resulted provides no basis for relief.

## VI.   CONCLUSION

For all of the foregoing reasons, the court's order denying Mader's motion for reconsideration of the court's prior order terminating loss mitigation should be affirmed in all respects.

Dated:      Garden City, New York
            April 29, 2020

                              Bonchonsky & Zaino, LLP

                       By:   /s/ Kevin M. Butler
                             Kevin M. Butler, Esq.
                             Peter R. Bonchonsky, Esq.
                             Appellate Counsel for
                             Appellee JPMorgan Chase Bank, N. A.
                             226 Seventh Street, Suite 200
                             Garden City, New York 11530
                             516-747-1400

25

## <u>CERTIFICATE OF COMPLIANCE</u>

Appellee's brief complies with the type-volume limit of Fed. R. Bankr. P. 8015(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. Bankr. P. 8015(g), this document contains 5,884 words.

Appellee's brief complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman style font.


<u>/s/ Kevin M. Butler          </u>          Date: April 29, 2020
Signature


<u>Kevin M. Butler</u>